NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-859

KEITH W. BREWER

vs.

CHESTER E. ANTHONY, personal representative.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In May of 2021, ninety-five year old Natalie MacKenzie (decedent) executed a durable power of attorney. The decedent named Keith W. Brewer as her agent and, on her death, granted Brewer the right to purchase her Milton residence, "if he is interested," for the sum of $1,000. The decedent passed on January 18, 2022, while under a conservatorship, and thereafter, Chester E. Anthony was appointed as the personal representative of the estate.

Just before the decedent passed, her conservator filed an eviction proceeding in the Housing Court against Brewer, who had been living in the decedent's home for approximately nine years and was not paying rent. After the decedent passed, her

_____

[1] Of the estate of Natalie MacKenzie.

conservator filed a motion to substitute the personal representative (Anthony) as the plaintiff. Brewer was represented by counsel and both he and his counsel signed an agreement for judgment, for issuance of an execution, that was approved by a Housing Court judge. As part of that written settlement agreement in the Housing Court, Brewer would not be held responsible for paying any past rent or associated living costs and in turn he agreed to vacate the residence. Brewer also agreed that he "waives and releases any and all claims they had or has against the Plaintiff. Both parties waive all rights to stay or appeal."[2]

Brewer then filed a complaint for equitable and declaratory relief in the Probate and Family Court, arguing that the decedent's power of attorney made clear that Brewer was to be given an opportunity to purchase the home for the sum of $1,000 in recognition of his years of care of and companionship for the decedent. The judge entered summary judgment in favor of Anthony, concluding that the estate was not required to convey the real estate to Brewer because the durable power of attorney became ineffective on the decedent's death and, to the extent that Brewer claimed the existence of an enforceable contract,

---

[2] The agreement also noted that the parties assented to the motion to substitute parties.

2

Brewer signed a valid and binding release, which barred recovery.  The judge denied Brewer's motion for reconsideration.

Brewer appeals from the grant of summary judgment and from the order denying the motion for reconsideration, arguing that the release he signed in the Housing Court was ambiguous and does not bar recovery in an action in the Probate and Family Court and that the judge erred in denying his motion to expunge certain records.[3]  We affirm.

Standard of Review.  We review the grant of summary judgment de novo.  See Gallagher v. South Shore Hosp., Inc., 101

_____

[3] Brewer argues the judge erred in failing to expunge certain records of an investigation by South Shore Elder Services into elder abuse of the decedent.  Other than noting that the judge did impound the records and did not rely on any information in the reports in granting summary judgment, we do not address this issue, because these arguments do not rise to the level of appellate argument.  Brewer does not cite to any authority that expungement is required in situations akin to those here.  See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).  The only case Brewer cites to establish that the court was required to order expungement, Police Comm'r of Boston v. Municipal Court of Dorchester Dist., 374 Mass. 640, 661 (1978), states only that a court "may" order expungement "where the utility of the records for law enforcement purposes is likely to be minimal or nonexistent."  Brewer cites no cases, nor does our independent review reveal any such cases, that would require expungement.  Additionally, even if such a case existed, our review of the records that Brewer sought to expunge could be utilized by law enforcement in the future, and thus are not the type of record discussed in Police Comm'r of Boston, supra.  Although Brewer makes several constitutional arguments why the Department of Elder Affairs, a nonparty, might be required to expunge its records, we do not see how any ruling to expunge the records currently held and impounded by the Probate and Family Court could affect records held by a nonparty.

3

Mass. App. Ct. 807, 810 (2022). The grant of summary judgment is appropriate where "viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law." Id., quoting Lev v. Beverly Enters.-Mass., Inc., 457 Mass. 234, 237 (2010).

Discussion. At the outset, it is important to note that Brewer does not challenge the validity of the agreement he signed in the Housing Court or claim that he signed it under duress or fraud. Instead, Brewer claims that the language of the release was ambiguous and that signing a release in the Housing Court only related to the eviction matter and does not bind him in an action in the Probate and Family Court relating to the transfer of the residence. We disagree.

The language of the release Brewer signed is clear and unambiguous and released Anthony from "any and all claims" that Brewer had or has against Anthony. Brewer cannot now create an ambiguity simply by claiming that the terms "any and all claims" and "judgment" only pertain to the eviction. See Boazova v. Safety Ins. Co., 462 Mass. 346, 351 (2012) ("[A]n ambiguity is not created simply because a controversy exists between the parties, each favoring an interpretation contrary to the other" [citation omitted]). Brewer argues that since the Housing Court does not have jurisdiction over the transfer of property by an

4

estate, the agreement signed by the parties in the Housing Court cannot bar a claim in the Probate and Family Court of entitlement to property. Brewer misunderstands the effect of the release. Simply stated, where Brewer signed the release is irrelevant. Whether Brewer signed the agreement containing the release while he was in court or somewhere else, such as in a law office with counsel by his side, the binding nature and scope of the agreement is derived from its language and the fundamental tenets of contract law, not from the power of the court where it might have been agreed on and in which it was initially filed.

Even if Brewer did not foresee that his claim would be barred, a release is "to be given effect, even if the parties did not have in mind all the wrongs which existed at the time of the release" (citation omitted). Schuster v. Baskin, 354 Mass. 137, 140 (1968). The release language Schuster, supra at 139, is like the language signed by Brewer. While Brewer claims that the release was intended to release Anthony only in the eviction action, the plain language of the release cannot be construed as narrowly as Brewer would hope. See Eck v. Godbout, 444 Mass. 724, 732 (2005) ("[T]he mere fact that a release as worded extends to matters that the parties did not specifically have in mind at the time of execution does not operate to exclude those matters from the scope of the release"). To prevent the very

5

issue Brewer now confronts -- that parties may sign a release and not realize that the broad language may sweep in other matters not in play at the time of signing and releasing those claims as well -- courts have made clear that any exception to or reservation of rights in a general release should be clearly noted in the release itself. See Tupper v. Hancock, 319 Mass. 105, 107-108 (1946). Here, the terms of the release were "broad and general" and did not contain any exceptions or reservations of rights. Schuster, supra at 140.

Next, Brewer appears to argue that summary judgment was improper because a disputed issue of fact existed as to the scope of the release. However, failure of a party to fully read or comprehend the release before signing does not affect its validity. While Brewer may have misunderstood that releasing Anthony from "any and all claims they had or has" was limited to claims in the eviction matter, "[i]t is the rule in this Commonwealth that the failure to read or to understand the contents of a release, in the absence of fraud or duress, does not avoid its effects." Lee v. Allied Sports Assocs., Inc., 349 Mass. 544, 550-551 (1965).

We conclude that the release bars Brewer from bringing an action against Anthony arising out of the decedent's former home

and therefore need not discuss other errors alleged by Brewer, which are not relevant to this analysis.[4]

_Judgment affirmed._

_Order denying motion for reconsideration affirmed._

By the Court (Sacks, Singh & Walsh, JJ.[5]),

Anne M. Thomas

Assistant Clerk

Entered:  April 4, 2024.

---

[4] We note briefly that it matters not whether the judge, in denying the motion for reconsideration, erred in relying in part on claim preclusion.  The judge correctly relied on the language of the release, which was sufficient to bar this action.  Likewise, it matters not whether Anthony was the proper party to implement the language in the decedent's power of attorney regarding sale of the property to Brewer.  It is Brewer who chose to bring this action against Anthony, and it is this action that the judge correctly held was barred by the release.

[5] The panelists are listed in order of seniority.